UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PA VANG,<br><br>   Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>   Defendant. | Case No. 1:24-cv-01293-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 13) |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 9).

Plaintiff argues as follows:
1. The ALJ erred by rejecting Plaintiff's testimony without giving specific, clear and convincing reasons.
2. The ALJ erred by improperly evaluating the treating clinical psychologists' medical source statements.
3. The ALJ erred in finding the prior psychological administrative medical findings persuasive.

(ECF No. 13, pp. 1-2).

Having reviewed the record, administrative transcript, the parties' briefs, and the applicable law, the Court finds as follows.

1

# I. ANALYSIS

## A. Subjective Complaints

Plaintiff argues that the ALJ erred by discounting her testimony. (ECF No. 13, p. 13). Defendant argues that the ALJ gave multiple sufficient reasons to discount her testimony. (ECF No. 14, p. 16).

As this claim ultimately concerns the RFC, the Court begins by noting the following legal standards.  A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

Here, the ALJ formulated the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform work at a moderate noise level; she can perform low-stress jobs, defined as those having only occasional decision making required and only occasional changes in the work setting; she can understand and perform simple, routine tasks; and she can have occasional interaction with supervisors and coworkers, but no interaction with the public.

(A.R. 15).

Plaintiff does not specify what additional limitations she believes were warranted based on her subjective complaints, but generally indicates that the RFC should have incorporated further restrictions regarding her hearing loss, mental health symptoms, and memory problems. (ECF No. 13, pp. 14-15).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 16). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

The ALJ summarized Plaintiff's subjective complaints as follows:

> At the hearing, the claimant testified that she lived with her niece and her niece's 4 children. She had a driver's license. She last drove 2 years ago. Her relatives drove her places. The claimant last worked as a material handler at Logic PD. She was laid off. The claimant testified that her ability to work was limited by her hearing and forgetfulness. She treated with Dr. Popper for 2 years. She saw him once a week. Concerning her depression, she did not want to live because she could not hear well. Her family reminded her of appointments and to take her medicine. She could not cook or help around the house. The claimant asked what she did on an average day, and she responded that she did not do anything. She stayed in her room by herself.

(A.R. 16).

Thereafter, the ALJ provided a summary of the evidence, including Plaintiff's subjective complaints, and concluded that "the record supports no more than moderate functional limitations." (A.R. 17). As explained below, the ALJ discounted Plaintiff's subjective complaints as being inconsistent or otherwise unsupported by the record.

Beginning with Plaintiff's claim about not being able to work because of her hearing loss, the ALJ noted that, "[w]hile [Plaintiff] alleged that she could not work due to her hearing loss, the record demonstrates that she was able to work at substantial gainful activity levels despite her history of hearing loss and use of hearing aids." (A.R. 17). Similarly, the ALJ observed that the reason that Plaintiff reportedly stopped working—her alleged impairments, including hearing loss—was inconsistent with her later testimony and documents in the record demonstrating that she was laid off due to the pandemic. (A.R. 17, referring to A.R. 47 (Plaintiff's testimony that her employer "laid [her] off"); A.R. 549 (report stating that Plaintiff "worked as a material handler for 3 years before being laid off in 2020 due to the Covid-19 pandemic")). Next, the ALJ noted that Plaintiff's "hearing loss was treated with hearing aids, which improved her word discrimination score to 95% on the right," although the ALJ acknowledged that Plaintiff had profound hearing loss on the left. (A.R. 16, 17). After the evaluation showing 95% word discrimination on the right side, Plaintiff "did not require any follow up for worsening hearing or problems with her hearing aids." (A.R. 16). Lastly, the ALJ noted that, at the hearing, while Plaintiff "needed questions repeated at times (*see* Testimony and Exhibit 4F/4), she was generally able to engage in sustained conversation without the need for hearing assistance (*see e.g.* Testimony and Exhibit 5F/2)." (A.R. 17).

Turning to Plaintiff's mental health impairments, the ALJ concluded that they were "only partially supported by the record." (A.R. 17). The ALJ concluded that Plaintiff's allegations about her symptoms were inconsistent. For example, "[a]t the hearing, the claimant alleged that she stayed in her room all day and did not do anything." (A.R. 17, referring to A.R. 54 (Plaintiff's testimony stating, "I stay in my room all by myself [every day]")). However, the ALJ noted that the record otherwise contradicted this assertion:

> [I]n the Function Report completed in June 2021, the claimant reported going outside daily for sunshine, driving at times, and shopping in stores weekly. (Exhibit 5E). Likewise, at the psychological consultative examination, she reported ability to perform self-care independently; she could complete simple household tasks, shop, and cook simple meals; she was able to pay bill bills and/or handle cash appropriately; she could go out alone; and she enjoyed needlework. (Exhibit 5F/3).

(A.R. 17).

Additionally, the ALJ noted that, while Plaintiff's mental health treatment notes showed symptoms like anxiety, depression, and abnormal mood, "the treatment notes do not support more than moderate limitations, as the claimant did not routinely demonstrate serious deficits or abnormalities in memory, attention, concentration, thought content, goal-direct thought process, cognitive functioning, hallucinations, suicidal ideation, or homicidal ideation." (A.R. 17). Elsewhere, the ALJ concluded that Plaintiff's symptoms were not as severe as she claimed because she never required "emergent care or inpatient psychiatric hospitalization for any mental impairment."[1] (A.R. 17).

Lastly, the ALJ concluded that Plaintiff's "allegations concerning her memory issues [were] not entirely supported by the record." (A.R. 17).

> At the hearing, the claimant testified that her ability to work was limited by her forgetfulness, and explained that she provided inaccurate answers on her educational history due to her memory issues. (Testimony). However, the Medical Disorder Questionnaire Form shows the claimant was able to provide a detailed description of her family, environmental, and educational history to her

---

[1] The ALJ also noted that Plaintiff did not take any psychotropic medication, but as Plaintiff points out, and as Defendant does not contest, this is inaccurate. (A.R. 17; ECF No. 15, p. 3). Accordingly, the Court will not consider this as a valid reason to discount Plaintiff's allegations. However, as explained below, the other reasons that the ALJ relied on are independently sufficient to discount Plaintiff's complaints.

5

psychologist. (Exhibit 17F/2-5). Similarly, while the WMS-IV showed overall memory functioning was in the borderline range for her age group, the examiner noted that she gave inconsistent responses and there was poor effort. (Exhibit 5F/5-6). The contemporaneous mental status examination also showed her memory was unimpaired. *Id.* at 4.

(A.R. 17-18).

Plaintiff contends that some of the ALJ's reasoning is flawed. For example, she argues that her subjective complaints about disabling hearing loss and mental health issues are supported by notes from her treating psychologist, which recorded hearing difficulties in almost every visit along with mental symptoms, *e.g.*, depression. (ECF No. 13, p. 7).

Upon review of the evidence, the Court concludes that the ALJ's determination—that Plaintiff's symptoms were not pervasive or severe enough to be totally disabling—is a reasonable interpretation of the record.

The ALJ relied, in part, on the fact that the treatment notes did not routinely demonstrate serious problems related to Plaintiff's "suicidal ideation." (A.R. 17). This is supported by the record. In the numerous treatment notes at issue, there are only isolated references to Plaintiff having suicidal ideation, and none indicate that Plaintiff had the intent to act on such thoughts. (A.R. 547 ("Plaintiff was positive for suicidal thoughts with no intent or plan"); A.R. 553 ("Patient noted having intense anxiety with thoughts of death and dying (due to, a recent discord with a friend due to her condition))"; A.R. 586 (noting "thoughts of death and suicide (with no intent or plan))"). Thus, while this is certainly a symptom of Plaintiff's mental health issues, the record does not indicate that it was so pervasive or severe as to render Plaintiff disabled. In short, while Plaintiff may wish for the ALJ to have provided more restrictions based on her treatment record, this amounts, at most, to another rational interpretation of the evidence, which is not sufficient to conclude that the ALJ erred. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

It was also proper for the ALJ to find Plaintiff's hearing testimony—that she stayed in her room by herself every day (A.R. 54)—inconsistent with evidence regarding her "ability to perform self-care independently; she could complete simple household tasks, shop, and cook

1 simple meals; she was able to pay bill bills and/or handle cash appropriately; she could go out
2 alone; and she enjoyed needlework." (A.R. 17, citing A.R. 478). While Plaintiff argues that "the
3 ALJ does not provide any analysis regarding how Plaintiff's limited activities translate to the
4 ability to maintain full-time employment on a regular and continuing basis," (ECF No. 13, p. 9)
5 the fact that Plaintiff's testimony on this subject was inconsistent with other evidence is a valid
6 basis to discount subjective complaints. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)
7 (noting transferability-to-work-setting and inconsistency as two grounds to discount subjective
8 complaints).

9 The ALJ also properly relied on previous testing from a consultative examiner that found
10 her memory unimpaired. Plaintiff argues that the ALJ should not have relied on this testing
11 because the ALJ ultimately found this examiner's opinion unpersuasive. (ECF No. 13, p. 15).
12 However, the reasons that the ALJ gave for finding the consultative examiner's opinions
13 unpersuasive, that it was "not supported by her examination of the claimant, nor is it consistent
14 with the overall record, as she did not have the opportunity to review the subsequently submitted
15 mental health treatment notes or consider the claimant's testimony," did not call into question the
16 validity of the memory tests. (A.R. 19). During that testing, Plaintiff "was able to recall 3 out of 3
17 words (ear, wagon, blue) in an immediate mode and remotely," "was able to recall what was had
18 for breakfast," "was able to recall date and place of birth," and "was also able to recall family
19 history." (A.R. 479). The ALJ was correct to rely on such testing despite questioning Plaintiff's
20 "inconsistent responses and poor effort" regarding other testing and discounting the examiner's
21 ultimate opinion. (A.R. 18, 480).

22 The Court thus finds that the ALJ gave sufficient reasons for discounting Plaintiff's
23 subjective complaints in formulating the RFC.

### B. Medical Opinion

#### 1. Legal Standards

26 Plaintiff also challenges the ALJ's analysis of various medical opinions. The following
27 standards apply to these arguments.
28 Because Plaintiff applied for benefits in 2021, certain regulations concerning how ALJs

must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (A.R. 10). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical

8

sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

### 2. Discussion

#### a. Dr. Popper

Plaintiff challenges the ALJ's decision to find the opinion of her psychologist, Dr. Mark Popper, not persuasive. (ECF No. 13, p. 7). The ALJ discussed this opinion as follows:

> In November 2022, Mark Popper, Ph.D. opined that the claimant's impairments precluded performance of 15% or more of an 8-hour day in all areas; she would be absent 5 days or more a month; and she would be unable to complete a workday 5 days or more a month. (Exhibit 11F; *see* Exhibit 13F; 15F). In April 2024, Dr. Popper opined that the claimant's capacity in all paragraph b functional areas was poor. (Exhibit 17F). I find this opinion not persuasive.
>
> Dr. Popper's opinion is not supported by his own treatment notes. As discussed above, the claimant presented as anxious and depressed; she was poorly dressed; she was poorly groomed with body odor; mood and affect were abnormal; she had difficulty hearing and comprehending questions; she spoke rapidly and excessively with a noted stutter; and she made minimal eye contact. (*See e.g.* Exhibit 17F/8, 10, 34). Otherwise, Dr. Popper's treatment notes do not support his opinion, as the claimant did not routinely demonstrate serious deficits or abnormalities in memory, attention, concentration, thought content, goal-direct thought process, cognitive functioning, hallucinations, suicidal ideation, or homicidal ideation. *Id.* While I recognize that Dr. Popper stated in the Medical Disorder Questionnaire Form that there were findings of delusions, paranoid ideation, poor concentration, poor memory and suicidal ideation (Exhibit 17F/3), his treatment notes do not outline such findings (Exhibit 17F/7-60).
>
> Dr. Popper's opinion is also inconsistent with the overall record. As discussed above, the claimant did not require emergent care or inpatient psychiatric hospitalization for any mental impairment, nor was she taking any psychotropic medication.[2] (*See* Exhibit 24E). Moreover, Dr. Popper's opinion is inconsistent with the claimant's ability to perform a wide range of activities of daily living. In the Function Report completed in June 2021, the claimant reported going outside daily for sunshine, driving at times, and shopping in stores weekly. (Exhibit 5E). Likewise, at the psychological consultative examination, she reported ability to perform self-care interpedently; she could complete simple household tasks, shop, and cook simple meals; she was able to pay bill bills and/or handle cash appropriately; she could go out alone; and she enjoyed needlework. (Exhibit 5F/3).

(A.R. 20-21).

---

[2] As noted above, there is evidence that Plaintiff was taking psychotropic medication. Accordingly, the Court does not consider this as a reason to discount Dr. Popper's opinion. However, as explained in this order, the ALJ's other reasons are sufficient to discount Dr. Popper's opinion.

Plaintiff argues that the ALJ erred because Dr. Popper's treatment notes support his conclusions, that her lack of emergent care or hospitalization is not a valid reason to reject Dr. Popper's opinion, and that the ALJ "cherry-picks" the record regarding her daily activities. (ECF No. 13, pp. 7-11). Defendant argues that the ALJ properly found Dr. Popper's opinion to be not persuasive based on the supportability and consistency factors. (ECF No. 14, pp. 12-14).

Upon review of the parties' arguments and the record as a whole, the Court agrees with Defendant.

Beginning with the supportability of Dr. Popper's opinion, the ALJ acknowledged the symptoms recorded in Dr. Popper's treatment notes, *e.g.*, Plaintiff's difficulty hearing, depression, and poor grooming. However, the ALJ ultimately found the disabling limitations opined by Dr. Popper not persuasive, concluding instead that moderate limitations were warranted in the RFC. Notably, the ALJ concluded that the treatment records did not show routine nor serious enough symptoms to find Plaintiff disabled. (A.R. 21). As already discussed above in connection with Plaintiff's subjective complaints, the ALJ reasonably concluded that the treatment notes did not warrant more restrictive limitations in the RFC, thus the ALJ's interpretation of the record must prevail.

Likewise, as to consistency, the ALJ did not err by discounting Dr. Popper's opinion based on Plaintiff not requiring emergent care of hospitalization for her mental health issues. Dr. Popper assessed the most restrictive limitations possible for Plaintiff in every single mental category. (A.R. 517-19). It was reasonable for the ALJ to reject such extreme limitations, among many other reasons, because more significant mental health care would normally be expected for a person with such limitations. *Cuyson v. Berryhill*, No. 2:16-CV-01913 AC, 2017 WL 3913874, at *5 (E.D. Cal. Sept. 7, 2017) (finding no error in ALJ's reliance on lack of hospitalization, among other considerations, to reject subjective testimony).

Regarding Plaintiff's daily activities, Plaintiff contends that the ALJ "cherry-picks" evidence about Plaintiff's abilities. (ECF No. 13, p. 10). True, an ALJ is not permitted to "selectively" rely on evidence to find a claimant not disabled, while "ignor[ing]" evidence favorable to the claimant. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). However,

the ALJ did not ignore any evidence here. Citing specific examples from the record, the ALJ properly drew a contrast between Dr. Popper's extreme limitations and Plaintiff's daily activities that undercut them, including her going outside, driving, and shopping.

Lastly, the Court notes that the ALJ also based on the RFC, in part, on medical opinions from state agency consultants, who, contrary to Dr. Popper, concluded that Plaintiff was not disabled. (A.R. 18-19). The Court addresses those opinions below.

In short, the Court concludes that the ALJ's review of Dr. Popper's opinion was supported by substantial evidence after consideration of the supportability and consistency factors.

### b.  State Agency Consultants

Plaintiff next challenges the ALJ's decision to mostly credit the opinions of state agency consultants. (ECF No. 13, pp. 11-12). The ALJ discussed these opinions as follows:

> I have considered the prior administrative medical findings of the State agency medical consultants A. Dipsia, M.D. and D. Tayloe, M.D. and find these persuasive. (Exhibit 1A; 3A). Their finding is supported by their review of the record, which included the claimant's subjective reports, the medical evidence, and her treatment history. Their finding is also consistent with the overall record. As discussed above, the claimant's hearing loss was treated with hearing aids, which improved her word discrimination score to 95% on the right. (Exhibit 6F/9). Otherwise, the claimant did not require any follow up for worsening hearing or problems with her hearing aids after she received her replacement hearing aids. (*See e.g.* Exhibit 32E). While the claimant needed questions repeated at times (*see* Testimony and Exhibit 4F/4), she was generally able to engage in sustained conversation without the need for hearing assistance (*see e.g.* Testimony and Exhibit 5F/2).
>
> As for the prior administrative medical findings of the State agency psychological consultants Jennifer Duffy, Ph.D. and Stephen Saxby, Ph.D., I find these mostly persuasive. (Exhibit 1A; 3A). Their finding for no more than moderate limitation is supported by their review of the record, which included the claimant's subjective reports, the psychological consultative examination, and her reported activities of daily living. Their finding of no more than moderate limitation is also consistent with the overall record. As discussed above, the claimant did not require emergent care or inpatient psychiatric hospitalization for any mental impairment, nor was she taking any psychotropic medication. (*See* Exhibit 24E). Rather, her treatment was limited to therapy, which began 2 years after the alleged onset date and the mental status examinations showed no more than moderate findings. (Exhibit 17F). Nonetheless, I have adjusted the paragraph b ratings along with the associated limitations based on the mental health treatment records submitted at

the hearing level along with the claimant's testimony. (Testimony and Exhibit 17F).

(A.R. 18-19).

Plaintiff argues that the ALJ's findings are not supported by substantial evidence. First, Plaintiff notes that Dr. Popper's treatment notes consistently reported her hearing difficulties. (ECF No. 13, p. 12). However, as explained above, the ALJ reasonably concluded that Plaintiff's hearing loss was not disabling based on various considerations, including Plaintiff's ability to work before the relevant period despite her hearing problems and the fact that Plaintiff had a hearing test with a 95% word discrimination score. Second, Plaintiff contends that, "contrary to the ALJ's assertion, Plaintiff's hearing testimony reflects significant hearing and speaking limitations. Plaintiff needed questions repeated multiple times throughout the hearing." (ECF No. 13, p. 12). The Court has reviewed the hearing transcript and the ALJ accurately concluded that Plaintiff was "generally able to engage in sustained conversation without the need for hearing assistance."[3] (A.R. 18).[4]

Third, Plaintiff generally criticizes the ALJ's opinion because the state agency consultants did not review all the records. However, the fact that they did not review all the records is not a reason, by itself, to reject their opinions. *See Maliha K. v. Saul*, No. 8:19-CV-00877-MAA, 2020 WL 2113671, at *6 (C.D. Cal. May 4, 2020) ("But the fact that a non-examining state agency physician fails to review the entire record does not, by itself, mean that his or her opinion cannot serve as substantial evidence."). Notably, Plaintiff does not contest that the ALJ reviewed all the relevant records at issue, including her often cited treatment notes from Dr. Popper.

In short, the Court concludes that the ALJ's review of the state agency opinions was supported by substantial evidence after consideration of the supportability and consistency factors.[5]

---

[3] The Court presumes that the ALJ meant that Plaintiff did not need "hearing assistance" beyond her hearing aids.

[4] The Court also notes that Plaintiff testified with the assistance of an interpreter at the hearing, which may have contributed to any communication difficulties.

[5] Plaintiff's brief contains two footnotes appearing to also challenge the ALJ's treatment of the opinions of Dr. Pushpa Guarashani. (ECF No. 13, pp. 11-12 n. 7&8). Plaintiff's argument is not developed and need not be addressed by the Court. *See Hilao v. Est. of Marcos*, 103 F.3d 767, 778 n.4 (9th Cir. 1996) ("The

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated: __May 16, 2025__          /s/ Erica P. Grosjean
                                 UNITED STATES MAGISTRATE JUDGE

---

summary mention of an issue in a footnote, without reasoning in support of the appellant's argument, is insufficient to raise the issue on appeal."). Nor do Plaintiff's arguments as to Dr. Popper's opinion on her mental limitations necessarily apply to the opinion of Dr. Gurashani, which mostly concerned Plaintiff's physical limitations and was rejected in part because "the record does not demonstrate that he specializes in psychiatry or another mental health field." (A.R. 20).

13